**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

**MADISON COUNTY NURSING HOME,**                    **PLAINTIFF**

**VERSUS**                              **CIVIL ACTION NO.: 3:17-CV-422**

**THE BROUSSARD GROUP, L.L.C. AND**
**BROUSSARD HEALTHCARE CONSULTING,**
**L.L.C., previously known as BROUSSARD &**
**COMPANY HEALTHCARE CONSULTANTS,**
**L.L.C.**                               **DEFENDANTS**

**DEFENDANTS' MEMORANDUM IN SUPPORT OF RESPONSE TO PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

COME NOW Defendants THE BROUSSARD GROUP, L.L.C. and BROUSSARD

HEALTHCARE CONSULTING, L.L.C. previously known as BROUSSARD & COMPANY

HEALTHCARE CONSULTANTS, L.L.C. (collectively, "Broussard"), by and through their

attorneys of record, and submit their Memorandum in Support of Response to Plaintiff's Motion

for Summary Judgment:[1]

**INTRODUCTION**

MCNH's sole basis for its Motion for Summary Judgment is its incorrect assertion that

Broussard did not retain expert witnesses to rebut MCNH's expert witnesses' reports. Even if

that assertion were true, MCNH ignores that expert testimony is not automatically admitted even

if it is not rebutted or opposed. To be admissible, expert testimony must meet the standards

provided by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S.

579 (1993) and its jurisprudential progeny. As detailed in Broussard's Motions to Exclude

Opinions and Testimony of MCNH's expert witnesses, MCNH's expert testimony is not

---

[1] Broussard submits this Response to Plaintiff's Motion for Summary Judgment although it is under no obligation to do so because MCNH failed to discharge its initial burden of demonstrating entitlement to summary judgment. *E.D. ex rel. E.L. v. Pugh*, Civ. Action No. 2:11cv43, 2012 WL 2177625 at * 2 (S.D. Miss. June 13, 2012) (citing *John v. State of La. (Bd. of Tr. for State Coll. & Univ.*, 757 F. 2d 698, 708 (5th Cir. 1985).

admissible. All arguments in support of those Motions are incorporated herein as if set forth in full. (Docs. 98-101; 108-109).

MCNH failed to meet its burden to produce evidence of each and every element of its claims. It did not demonstrate the existence of a contract or a professional relationship between it and Broussard or produce evidence that Broussard caused its alleged damages. MCNH did not produce admissible evidence of its damages. MCNH failed to prove the elements of fraud or gross negligence by clear and convincing evidence and therefore cannot recover punitive damages or attorney's fees. For the reasons set forth herein, Broussard requests that the Court deny MCNH's Motion for Summary Judgment.[2]

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." The Court considers summary judgment evidence in the light most favorable to the nonmoving party. *DIRECTV Inc. v. Robinson*, 420 F.3d 532, 536 (5th Cir. 2005). When the moving party makes this demonstration, the burden shifts to the non-moving party to demonstrate why summary judgment should not be granted. To avoid summary judgment, a non-moving party must set forth "specific facts showing the existence of a genuine issue for trial." *Jenkins v. Island View Casino*, Civ. Action No. 1:13cv352, 2014 WL 5774133 (S.D. Miss. 2014) (citing *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005)).

When a plaintiff moves for summary judgment, "it is ***imperative*** that the plaintiff, as the party with the burden of proof at trial, ***present actual proof, not mere allegations***, in support of each and every element of its claim." *Phillips Med. Capital, LLC v. P&L Contracting, Inc.*, Civ.

---

[2] Broussard incorporates by reference all arguments in support of its Motion for Summary Judgment and Motions to Exclude MCNH's expert witnesses Leon E. "Ed" LeBreton, Dawn K. Snyder, and Kimberly Bellitto as if set forth herein in full. *See* (Docs. 98-103; 108-109).

Action No. 2:10cv92, 2011 WL 13217913 at *1 (N.D. Miss. Nov. 21, 2011) (Sanders, Mag. J.) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190 (5th Cir. 1986) (emphasis added)). Where, as is the case here regarding MCNH's Motion for Summary Judgment, the moving party has the burden . . . his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Calderone v. U.S.*, 799 F.2d 254, 258-259 (6th Cir. 1986)).

## ARGUMENT

Broussard requests that the Court deny MCNH's Motion for Summary Judgment due to its failure to cite legal authority in support of its claims, its failure to prove the elements of its causes of action, and its failure to produce admissible evidence of damages.

## I.      MCNH cited virtually no legal authority in support of its claims

MCNH has not met its summary judgment burden because it cited scant legal authority in support of its Motion for Summary Judgment and no legal authority at all concerning the elements of its causes of action. The movant for summary judgment "bears the burden of establishing that there are no genuine issues of material fact." *Evergreen Apartments, LLC v. City of Tupelo*, Civ. Action No. 1:13-cv-00157, 2016 WL 3180769 at *5 (N.D. Miss. June 6, 2016) (citing *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008)). While this burden is not onerous, it requires more than a single unsupported assertion of law. *Id.* (citing *Lilani v. Noorali*, No. H-09-2617, 2011 WL 13667, at *5 (S.D. Tex. Jan. 3, 2011) (a party does not meet its summary judgment burden if it fails to cite to any legal authority in support of those arguments); *see also Hines v. Liberty Life Ins. Co.*, Civ. Action No. EP-11-CV-545, 2013 WL 310320 at * (W.D. Tex. Jan. 25, 2013) (refusing to evaluate summary judgment arguments that were unsupported by any citation to legal authority).

MCNH directly cites to only three cases in its Memorandum in Support of its Motion for Summary Judgment. Including the parenthetical citations and internal citations, MCNH cites to only nine cases. MCNH cites no legal authority that identifies the elements of its causes of action or that sets forth the type of evidence that supports each element. *Evergreen Apartments, LLC*, 2016 WL 3180769 at *5.  MCNH cites no legal authority that supports its assertion that expert reports are not genuinely disputed when an opposing party allegedly does not retain experts in a certain field. *Id.*

The only case MCNH cites in the "Argument" section of its Memorandum in Support is not even applicable to MCNH's claims, as it concerns proof of damages for loss of future profits. (Doc. 107, pp. 6-7); *Lane v. Lampkin*, 234 So. 3d 338 (Miss. 2017). MCNH did not claim loss of future profits in its Complaint or in its Motion for Summary Judgment and Memorandum in Support.

MCNH did not meet its summary judgment burden because it failed to cite legal authority in support of its claims and arguments. *Evergreen Apartments, LLC*, 2016 WL 3180769 at *5. Broussard requests that the Court deny MCNH's Motion for Summary Judgment in its entirety.

## II.    MCNH did not prove the elements of its causes of action

MCNH ignores that it, as the plaintiff in this action, bears the burden of proving its claims for relief by the standard of proof applicable to each of those claims. MCNH does not cite any authority regarding the elements of its claimed causes of action, much less present actual proof in support of each and every element of those claims. MCNH fails to proceed in the proper order, starting its analysis with its allegation that it has been damaged. MCNH then assumes that all other elements of its causes of action must be satisfied because it was allegedly damaged.

MCNH claimed, without support, that it "relied on the professional expertise of Broussard to collect all Medicare and related sums."[3] (Doc. 107, p. 2). MCNH did not establish the existence of a valid and binding contract or other evidence of a professional relationship with Broussard that would give MCNH the right to rely on Broussard's professional expertise. MCNH also claimed, without legal or factual support, that Broussard "made a number of non-standard Revenue Adjustments without MCNH's permission before adjusting these amounts off of MCNH's books." (Doc. 107, p. 2). MCNH cited no standard governing revenue adjustments. MCNH provided no evidence that the adjustments were incorrectly made or otherwise improper or any other evidence showing that Broussard's acts or omissions caused its damages. Further, MCNH did not allege or produce evidence showing that it relied on any allegedly improper revenue adjustments.

A.      **Contract**

MCNH has not met its summary judgment burden to produce evidence to establish each and every element of its breach of contract claim. To establish a breach of contract claim, the plaintiff must prove by a preponderance of the evidence: "(1) the existence of a valid and binding contract, (2) the defendant has breached the contract, and (3) the plaintiff has been damaged monetarily." *Kelley, LLC v. Corinth Pub. Utils. Comm'n*, 200 So. 3d 1107, 1123 (Miss. Ct. App. 2016). MCNH did not, and cannot, show the existence of a valid and binding contract.

1.      **MCNH did not attach to its Motion a purported contract or any other evidence to demonstrate the existence of a contract**

MCNH produced no evidence in support of its Motion sufficient to show the existence of a contract between it and Broussard. MCNH claims its expert reports "serve as sufficient support

---

[3] That assertion is not supported by the language of the purported contract, the November 2010 Proposal, which contains no obligation or requirement that Broussard collect any amounts from Medicare or any other payor. (Doc. 102-3, p. 2 Section IV).

that Broussard . . . breached its contractual duties . . . as a matter of law . . . ." (Doc. 107, p. 5). MCNH, like the plaintiff in *Phillips* does not prove the elements of its contract claims. 2011 WL 13217913 at *1. Instead MCNH takes the existence of a contract as given, failing to even attach the purported contract as an exhibit to its Motion and submitting no affidavit or other proof of the existence of a valid contract, breach of that contract, or resulting damages. MCNH, as the plaintiff moving for summary judgment, wholly failed to comply with the imperative that it present actual proof in support of each and every element of its contract claims. *Phillips Med. Capital, LLC*, 2011 WL 13217913 at *1. Broussard therefore requests that the Court deny MCNH's Motion for Summary Judgment on its contract claims due to its complete failure to produce any evidence in support of that Motion that demonstrates the existence of a contract.

### 2.    The minutes rule renders MCNH unable to show the existence of a contract

MCNH cannot show the existence of a valid and binding contract due to the operation of the Mississippi "minutes rule." Mississippi law requires the Board of Trustees of a community hospital to keep minutes of its official business. MISS. CODE ANN. § 41-13-35(3). "A community hospital board of trustees, as does any public board in the State of Mississippi, ***speaks and acts only through its minutes***." *Wellness, Inc. v. Pearl River Cnty. Hosp.*, 178 So. 3d 1287, 1290 (Miss. 2015) (emphasis added). MCNH's Board of Trustees meeting minutes do not reflect a binding contract with Broussard. (Doc. 102-2).[4] The only purported contract referenced in MCNH's Board of Trustees meeting minutes is a proposal dated November 24, 2010 (the "November 2010 Proposal") that is attached to the meeting minutes dated November 24, 2010. (Doc. 102-2). Broussard did not execute that Proposal. (Doc. 102-3). From November 24, 2010

---

[4] To the extent Broussard refers to documents previously attached as Exhibits to Motions filed with the Court, Broussard cites to those documents in the record to avoid cluttering the Court's docket.

to November 24, 2014, MCNH's Board of Trustees meeting minutes do not mention Broussard in any way.[5]

Under the minutes rule, a contract with a Mississippi public entity does not exist unless a majority of a quorum of the entity's board approved the contract and the terms of the contract are recorded in the minutes of the board meeting. *Lefoldt v. Horne, L.L.P.*, 853 F.3d 804, 813-14 (5th Cir. 2017).[6] The minutes rule is one of general applicability to contracts with public entities. *Lefoldt*, 853 F.3d at 808. Therefore, a board of trustees of a public entity can only enter into a contract if the contract is recorded in its minutes. *Smith Cnty. v. Mangum*, 89 So. 913, 914 (Miss. 1921). Additionally, the contract "must be stated in express terms" when recorded in the minutes, because "no contract can be implied or presumed." *Lefoldt*, 853 F.3d at 812 (citing *Wellness, Inc.*, 178 So. 3d at 1291). Courts have found "no formation of a contract at all" when the terms of the purported contract are not recorded in the minutes of a community hospital's board. *Id.* at 813. "Mississippi has enforced the minutes requirement strictly, even when 'apparent injustice' results." *Lefoldt*, 853 F.3d at 820-21.

The minutes rule disposes of most, if not all, of MCNH's claims based on the November 2010 Proposal. If this Court finds the November 2010 Proposal is a contract, by its own terms it expired one year after its May 1, 2010 effective date. (Doc. 102-3, p. 1). Under the heading "TERM," the November 2010 Proposal provided:

---

[5] MCNH Trustee Paul Tankersley and MCNH's counsel confirmed that the minutes attached as (Doc. 102-2) contain all pre-litigation references to Broussard. (Doc. 102-5, 34).

[6] As discussed in more detail below, *Lefoldt* and the district court case *Lefoldt v. Rentfro* from which it arose involved in part malpractice claims by a community hospital against its accounting firm. The Fifth Circuit held that no contract legally existed between the community hospital and the accounting firm for the years 2010-2013 in a relationship that spanned 2009 through 2015 because the minutes of the community hospital's board of trustees contained no reference to the contracts that covered those years. *Lefoldt*, 853 F.3d at 813. On remand, another division of this Court held that **the lack of any reference in the minutes to the contracts that covered those years meant that the community hospital could not legally prove the existence of a professional relationship between it and the accounting firm.** *Lefoldt v. Rentfro*, Civ. Action No. 5:15-cv-97, 2017 WL 5972692 at *3 (S.D. Miss. Dec. 1, 2017) ("*Rentfro*").

> The term of this Agreement **shall** be for a period of one (1) year, commencing on the effective date set forth above. Thereafter, the Agreement **shall** be reviewed and **shall** continue from year to year unless terminated by either party in accordance with the provisions hereof.

(Doc. 102-3, p. 1) (emphasis added).

The word "shall" in a contract indicates that the provisions of the "TERM" section are mandatory, not permissive. *Glantz Contracting Co. v. General Electric Co.*, 379 So. 2d 912, 917 (Miss. 1980). Therefore, the November 2010 Proposal's express terms mandated it expired May 1, 2011, that the parties **shall** review the Proposal, and only then **shall** the contract continue from year to year unless terminated. The mandatory annual review provision is further proof that the contract expired after one year. (Doc. 102-3, p. 1). MCNH's Board of Trustees meeting minutes establish that MCNH failed to conduct the mandatory annual review necessary for the renewal of the one-year term. (Doc. 102-2); (Doc. 102-5, 34).

In September 2011, Broussard prepared a draft of an updated Billing Services Agreement ("September 2011 Proposal"). (Doc. 102-6); (Doc. 102-1, 34:22-25). MCNH cannot recover for a breach of the September 2011 Proposal because it is a not valid or enforceable contract. MCNH's minutes contain no mention whatsoever of the September 2011 Proposal or its essential terms. The September 2011 Proposal was signed only by Broussard and was not recorded in the MCNH Board of Trustees meeting minutes. (Doc. 102-6); (Doc. 102-2); (Doc. 102-1, 34:5-18). There is no record of the necessary board quorum or a copy of the September 2011 Proposal included in the minutes. (Doc. 102-2). Based on these undisputed facts and clear Mississippi law, a contract based on the September 2011 Proposal was never formed. *Lefoldt*, 853 F.3d at 811 ("[T]he minutes rule is partially in the nature of a statute of frauds or a prohibition of reliance on parol evidence to establish the terms of a contract [to which a public entity is a party]."); MISS. CODE ANN. § 41-13-35(3).

Pursuant to the minutes rule MCNH cannot establish the existence of a valid and binding contract, the first essential element of its breach of contract claim. Broussard requests that the Court deny MCNH's Motion for Summary Judgment on its contract claims due to MCNH's failure to produce any evidence in support of the Motion to show the existence of a valid and binding contract, the first essential element of its breach of contract claims. *Phillips Med. Capital, LLC*, 2011 WL 13217913 at *1.

### 3.    No covenant of good faith and fair dealing exists

If no contract exists, the implied covenant of good faith and fair dealing does not exist. *Amer. Bankers' Ins. Co. of Fla. v. Wells*, 819 So. 2d 1196, 1207 (Miss. Ct. App. 2001). "The duty of good faith and fair dealing arises from the existence of a *contract* between parties." *Id.* (emphasis in original). In this context, good faith requires upholding the expectations of the other party by complying with the purpose of the contract. *Cenac*, 609 So. 2d at 1272. Bad faith is a violation of standards of decency, fairness or reasonableness. *Id.* Furthermore, bad faith implies a conscious wrongdoing due to a dishonest purpose. *Univ. of So. Miss. v. Williams*, 891 So. 2d 160, 171 (Miss. 2004).

MCNH produced no evidence beyond rank speculation that Broussard violated standards of decency, fairness, or reasonableness. While MCNH alleged that Broussard intentionally made adjustments to accounts for Medicare claims to deceive MCNH regarding amounts owed for Medicare claims, it produced no evidence to show Broussard made adjustments for any dishonest purpose. (Doc. 102-7, 52:4-56:8); (Doc. 102-8, 26:25-28:3); (Doc. 102-9, 40:23-44:7). If a contract existed, MCNH was responsible for collecting accounts receivable pursuant to Section V of the November 2010 Proposal. (Doc. 102-3, p. 2). Neither Proposal contained language forbidding Broussard from making adjustments. (Doc. 102-3). MCNH's accountant and

bookkeeper worked with Broussard to make adjustments. (Doc. 102-5, 26:9-29:25); (Doc. 102-11); (Doc. 102-12).

Moseley testified that adjustments are nothing more than corrections and that it is not unusual for corrections to be made. (Doc. 102-4, 47:14-19; 52:13-18). In his report, which he wrote before the parties conducted depositions, MCNH's expert witness Ed LeBreton opined that Broussard should not have made adjustments to any accounts without MCNH's prior knowledge and approval. (Doc. 102-13, 90:13-24); (Doc. 102-10, p. 7). After writing his report, LeBreton learned that MCNH employees and Broussard had communicated about adjustments Broussard made, despite his report citing to the over 18,000 pages of emails produced in this action which include communications regarding adjustments Broussard made. (Doc. 102-13, 90:25-91:5); (Doc. 102-10, p. 4). Moseley testified that he did not know if Broussard was allowed by contract or agreement to make contractual adjustments and that he never told Broussard not to make adjustments, despite receiving numerous emails from Broussard employees advising him of adjustments they were making. (Doc. 102-4, 49:12-18). Mosely had access to prior period adjustment reports and the billing journal which contained information showing adjustments had been made, but he did not review them for adjustments. (Doc. 102-4, 42:20-43:16). Moseley communicated with MCNH's accountant and with Broussard regarding adjustments. (Doc. 102-4, 45:20-21); (Doc. 102-12).

LeBreton had no issue with Broussard performing tasks of which MCNH was aware and approved. (Doc. 102-13, 91:6-16). LeBreton testified that the adjustments Broussard made appeared on summary reports to which he has access. (Doc. 102-13, 92:11-93:6). While LeBreton contended Broussard mischaracterized those adjustments because a person unfamiliar with reading summary reports might draw incorrect assumptions from those reports, he did not

know if anyone at MCNH ever saw the summary reports on which those alleged mischaracterizations appeared. (Doc. 102-, 94:21-95:6). LeBreton testified that a person in Moseley's position at MCNH should be able to read and understand such a summary report, including any adjustments. (Doc. 102-13, 98:20-99:4). In over 18,000 pages of emails produced in this action, MCNH cannot point to a single instance when it instructed Broussard not to make adjustments despite knowledge that Broussard was making adjustments.

Broussard requests that the Court deny MCNH's Motion for Summary Judgment because MCNH did not prove the existence of a contract and because MCNH produced no evidence, only speculation, that would indicate Broussard acted other than in good faith. *Phillips Med. Capital, LLC*, 2011 WL 13217913 at *1.

### B.    Malpractice

MCNH alleged claims of negligence[7] and breach of fiduciary duty against Broussard. The plaintiff in a negligence action bears the burden of proof, and must prove each element by a preponderance of the evidence. *Smith v. A.C. ex rel. Chu*, Civ. Action No. 1:07cv974, 2009 WL 901883 at * 3 (S.D. Miss. Mar. 31, 2009) (citing *McIntosh v. Victoria Corp.*, 877 So. 2d 519, 522 (Miss. Ct. App. 2004)). Courts in Mississippi distinguish between malpractice and negligence by considering: (1) whether the action that lead to the claim arose during the professional relationship; and (2) whether professional judgment comes into question. *Great S. Excavators, Inc. v. TEC Partners, LLP*, 231 So. 3d 1011, 1013 (Miss. Ct. App. 2017). According to MCNH's Complaint and expert witness reports, its claims arise out of alleged wrongful acts that occurred during an alleged professional relationship between MCNH and Broussard. (Compl. ¶¶ 5,10);

---

[7] MCNH also alleged a cause of action for gross negligence. (Compl., ¶¶ 21-22). In Mississippi, there is no independent cause of action for gross negligence, as it is merely a higher degree of negligence that is appropriately considered in the context of determining punitive damages only after a determination of liability against the defendant. *White v. Nelson*, 196 So. 3d 1039, 1049-50 (Miss. Ct. App. 2016).

(Doc. 102-10, p. 10). Therefore, MCNH's alleged negligence and breach of fiduciary duty claims are malpractice claims. *Great S. Excavators, Inc.*, 231 So. 3d at 1013.

### 1.    No professional relationship legally existed

MCNH's malpractice claims fail because it cannot establish the existence of a professional relationship between it and Broussard. Whether seeking recovery for professional negligence or breach of fiduciary duty, the first element a professional malpractice plaintiff must prove is the existence of a professional relationship between it and the defendant. *Great S. Excavators, Inc.*, 231 So. 3d at 1014 (negligence); *White v. Nelson*, 196 So. 3d 1039, 1046 (Miss. Ct. App. 2016) (fiduciary duty). A community hospital board of trustees speaks and acts only through its minutes. *Wellness, Inc.*, 178 So. 3d at 1290. MCNH's Board of Trustees meeting minutes contain no mention of Broussard between November 24, 2010 and November 24, 2014. (Doc. 102-2, pp. 41, 50). MCNH produced no evidence that its Board of Trustees manifested an intent that Broussard provide professional services after the expiration of the November 2010 Proposal's one-year term on May 1, 2011, if ever. *Rentfro*, 2017 WL 5972692 at *3. MCNH's failure to establish a professional relationship between it and Broussard forecloses its professional malpractice claims. Broussard requests that the Court deny MCNH's Motion for Summary Judgment on its malpractice claims due to its failure to produce any evidence that it legally entered into a professional relationship with Broussard. *Phillips Med. Capital, LLC*, 2011 WL 13217913 at *1.

### 2.    Negligence-based malpractice

Assuming *arguendo* that MCNH could prove a professional relationship between it and Broussard, MCNH produced no evidence to support its negligence-based malpractice claims. Mississippi courts apply the principles of the common law of legal malpractice to claims of

accounting malpractice. *Wirtz v. Switzer*, 586 So. 2d 775, 779 (Miss. 1991) (abrogated on other grounds by *Upchurch Plumbing Inc. v. Greenwood Utils. Comm'n*, 964 So. 2d 1100, 1118 (Miss. 2007)). In a malpractice case based in negligence, a plaintiff must prove, by a preponderance of evidence, 1) existence of a professional relationship;  2) negligence by the professional in handling his client's affairs entrusted to him; and 3) injury proximately caused by that negligence." *Great S. Excavators, Inc.*, 231 So. 3d at 1014. To demonstrate proximate cause in a legal malpractice case based in negligence, the plaintiff must show that but for its attorney's negligence it would have been successful in the prosecution or defense of the underlying action. *Crist v. Loyacono*, 65 So. 3d 837, 842 (Miss. 2011) (identifying the case-within-a-case test for proximate cause). Analogizing the case-within-a-case test to this matter, MCNH must show that but for Broussard's negligence, MCNH would have received payment on all unpaid Medicare claims for which it seeks damages.

The only evidence MCNH submitted regarding its allegedly unpaid Medicare claims are Snyder's and Belitto's summaries of AHT summary reports purportedly drawn from Medicare claims information. MCNH submitted no admissible evidence to show its Medicare claims should or would have been paid. MCNH submitted no admissible evidence to show why its Medicare claims were not paid. In fact, MCNH submitted no admissible evidence to show that its Medicare claims at issue were not paid. Further, MCNH designated no fact or expert witness from the Centers for Medicare & Medicaid Services ("CMS") to testify that MCNH's claims would have been paid but for the negligence or other fault of Broussard. Instead, MCNH assumes that Broussard's negligence was the only reason its Medicare claims were not paid and designated experts in the field of Medicare claim submission. Snyder testified that her first step in calculating damages was to *assume* that Broussard was negligent as to each and every one of

the $2.2 million of receivables, including receivables she did not review or investigate.[8]

Specifically, Snyder testified:

> Q.    Okay.  You state "Damages incurred by the plaintiff were calculated by retrieving the aged accounts receivable aging AR6100A dated January 18, 2016, from the AHT AR closing documents located at the facility.  The ending balance of each payor was extracted from the aged accounts receivable and utilized as the starting point in calculating plaintiff damages."  It's true that you used the raw number of the account receivable report as of January 18, 2016 as the starting point for damages?
>
> A.    Correct.

(Doc. 98-2 at 43).

> Q.    What I'd like to know is then, if you started at $2,227,586.04 … you assume that—or you concluded that Broussard did something wrong with respect to each one of those accounts receivable?
>
> A.    That's correct.

(Doc. 98-2 at 49).

> Q.    Well can you tell me what they did wrong on each one?
>
> A.    I can give you a general overview without actually having the accounts right in front of me.
>
> Q.    Well, where are the actual accounts that you would have to have in front of you to tell me about each one?
>
> A.    The sampling is where I can start.
>
> Q.    Well the sampling gives us the information for the people in the sample, but not for all the people in the 2 million, right?
>
> A.    That's correct.
>
> Q.    Okay. And what I would like is all the backup for the conclusion that you drew that Broussard messed up each account receivable in the 2,227,586 that were sampled?
>
> A.    The 2 million is the total AR, if I'm not mistaken, correct?
>
> Q.    Yes. But you said you looked at each claim that was submitted for each claim in the 2 million.
>
> MR. MACINNIS: Object to the form. I don't think that's what she said.
>
> A.    No, that's not what you said.

---

[8] Again without support, Snyder added $122,170.90 to the $2.2 million of accounts receivable amounts that were uncollected and written off due to that uncollectibility.

BY MS. BURNTHORN:

Q.    Okay. I want to know if you looked at -- as I understood it from your report --

A.    Uh-huh (affirmative response).

Q.    -- you looked at all these things that you itemized with respect to payment reconciliation, DDE, remits, claims, demographics, MDS, dianogis codes, web portal, and census.

A.    Uh-huh (affirmative response).

Q.    And whatever you look at, that you looked at with respect to the sample that you attached to your report?

A.    I looked at all those for the sampling, correct. And as well for the 912. The 2.2 is the total AR.

Q.    I understand.

A.    It's the total AR. **I didn't look at that for the 2.2.** I looked at that for the 900.

(Doc. 98-2, at 49-51) (emphasis added).

Snyder admitted that she merely assumed malpractice on the part of Broussard as to Broussard's activity in creating the $2.2 million AR. She did not evaluate each claim which produced each AR that totaled $2.2 million. Snyder further explained that she did not even review the claims representing the $2.2 million AR to "back cut" billing situations in which Broussard's billing performance was adequate. She could not do that because she did not review claims for the entire $2.2 million AR. Snyder only deducted some categories of receivables from the $2.2 million of AR only because she concluded that billing these categories of claims was not the responsibility of Broussard based only on her own assumptions.

Snyder's methodology of first assuming Broussard's professional negligence and then working to justify that assumption is not reliable and is contrary to accepted standards for calculation of damages. Those standards require proof that damage exists <u>before</u> including that damage in a calculation – the exact opposite of the methodology applied by Snyder. (Doc. 104-2, p. 3). For instance, an accepted authority referenced and applied by Broussard expert Litolff states:

> "Recovery of damages for loss of profits is subject to the general principle that damages must be proximately caused by the wrongful conduct of the defendant. This principle governs the recovery of all compensatory damages. . . .
>
>                   \* \* \*
>
> The second requirement for loss of profits is that the damages be provided with reasonable certainty . . . damages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty."

(Doc. 98-5, at pp. 3-4) (citing ROBERT L. DUNN, RECOVERY OF DAMAGES FOR LOST PROFITS, 5th ed.).[9] Thus, accepted standards for calculations of the damages MCNH seeks require evidence of causation and evidence of reasonable certainty, neither of which are present in Snyder's report.

Based only on her own say-so, Snyder refused to admit that damages must be proximately caused by a defendant and proven to a reasonable certaqinty before they are included in a damages calculation. (Doc. 98-2 at 109-111).

Snyder assumed Broussard was negligent on 100% of claims submitted for MCNH. That assumption is only speculation, not admissible summary judgment evidence. Broussard requests that the Court deny MCNH's Motion for Summary Judgment on its negligence-based malpractice claims because MCNH failed to present any evidence that Broussard's negligence proximately caused MCNH's claimed damages from the rejection of its Medicare claims. *Phillips Med. Capital, LLC*, 2011 WL 13217913 at \*1.

### 3.     Fiduciary duty-based malpractice

MCNH alleged that Broussard breached a fiduciary duty to provide Medicare electronic billing, statistical information, and monthly journal entries by failing to bill in many instances or

---

[9] The Fifth Circuit, the Northern and Southern Districts of Mississippi, and the Supreme Court of Mississippi have cited to and applied the principles set forth in Dunn's treatise. *Work v. Commercial Underwriters Ins. Co.*, 61 F. App'x 120 n. 10 (5th Cir. 2003); *J&B Entertainment v. City of Jackson, Miss.*, 720 F. Supp. 2d 757, 764 (S.D. Miss. 2010); *Dijo, Inc. v. Hilton Hotels Corp.*, Civ. Action No. 2:00CV113, 2005 WL 5976555 at \*1 (N.D. Miss. June 16, 2005); *Puckett Machinery Co. v. Edwards*, 651 So. 2d 29, 37 (Miss. 1994); *Leard v. Breland*, 514 So. 2d 778, 783-84 (Miss. 1987); *Kaiser Investments, Inc. v. Linn Agriprises, Inc.*, 538 So. 2d 409, 414 (Miss. 1989); *Lovett v. E.L. Garner, Inc.*, 511 So. 2d 1346, 1353 (Miss. 1987); *City of New Albany v. Barkley*, 510 So. 2d 805, 807-08 (Miss. 1987). If a court relies on that treatise when considering economic damages issues, it stands to reason that an expert may reasonably rely on that treatise as well.

failing to timely follow up with billing. (Compl. ¶¶ 18-19). As mentioned above, Mississippi courts apply the principles of the common law of legal malpractice to claims of accounting malpractice. *Wirtz*, 586 So. 2d at 779. In the malpractice context, a fiduciary duty is a duty of loyalty or fidelity. *Singleton v. Stegall*, 580 So. 2d 1242, 1245 (1991). A breach of fiduciary duty is a breach of the professional's standard of conduct. *Crist*, 65 So. 3d at 842-43. "When the malpractice claim is based on an allegation of breach of fiduciary duty, the plaintiff must establish (1) the existence of [a professional] relationship; (2) the acts constituting a violation of the [professional]'s fiduciary duty; (3) that the breach proximately caused the injury; and (4) the fact and extent of the injury." *White v. Nelson*, 196 So. 3d 1039, 1046 (Miss. Ct. App. 2016). The proof of proximate cause in cases involving a claim of malpractice based on a breach of fiduciary duty is "to be tailored to the injury the client claims and the remedy he elects." *White*, 196 So. 3d at 1046.

As with its negligence-based claims, MCNH cannot prove any act or omission of Broussard proximately caused its injury. MCNH claims that Broussard breached a fiduciary duty "by failing to bill in many instances or by failing to timely follow-up with billing." (Compl. ¶ 19). Again, MCNH cannot establish the existence of a professional relationship between it and Broussard. MCNH has not established why any of its Medicare claims were not paid. MCNH designated experts to testify and opine regarding Medicare claim submission, but it did not present evidence or identify any fact or expert witness to establish that its Medicare claims would have been paid but for Broussard's negligence or other fault. Without such evidence, MCNH's fiduciary duty-based malpractice claims are nothing more than speculation, which is not admissible summary judgment evidence. Broussard requests that the Court deny MCNH's Motion for Summary Judgment on its fiduciary duty-based malpractice claims because MCNH

failed to present any evidence that Broussard's alleged breach of fiduciary duty proximately caused MCNH's claimed damages from the rejection of its Medicare claims. *Phillips Med. Capital, LLC*, 2011 WL 13217913 at *1.

### C.    Fraud

The nine elements of common-law fraud are (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury. *In re Mississippi Medicaid Pharm.*, 850 So. 2d 78, 84 (Miss. 2003). The plaintiff must prove all elements of fraud by clear and convincing evidence. *Gallegos v. Mid-S. Mortgage & Inv., Inc.*, 956 So. 2d 1055, 1059 (Miss. Ct. App. 2007). Failure to prove any one of the elements of fraud by clear and convincing evidence is grounds for dismissal. *Gallegos*, 956 So. 2d at 1059-1060. MCNH's fraud claim is based only on its allegations that Broussard made adjustments with the intent to deceive MCNH about uncollectible accounts receivable. (Compl. ¶¶ 24-25). MCNH did not establish the intent, falsity, ignorance of falsity, reliance, or proximate injury elements of its fraud claims. In fact, MCNH did not even allege it relied on allegedly false statements.

MCNH's bookkeeper Jim Moseley testified that he knew Broussard made adjustments to MCNH's Medicare accounts receivable to reflect claims which were not collectable for a variety of reasons. (Doc. 102-4, 42:20-51:19). Moseley and Logan both testified that they never instructed Broussard not to make adjustments. (Doc. 102-4, at 49:12-18); (Doc. 102-1, at 118:2-7). MCNH produced no evidence and did not allege that the adjustments Broussard made were inaccurate. *Dorsey*, 2009 WL 1976526 at *3; *Chambers*, 968 So. 2d at 951. While LeBreton

contended Broussard mischaracterized those adjustments, he did not know if anyone at MCNH ever saw the summary reports on which those alleged mischaracterizations appeared. (Doc. 102-13, 94:21-95:6). Likewise, MCNH failed to produce any evidence that it relied on the allegedly mischaracterized adjustments. Moseley, however, communicated with MCNH's accountant and with Broussard regarding adjustments. (Doc. 102-4, at 45:20-21); (Doc. 102-12).

MCNH had no written policy for adjusting accounts receivable for uncollectable amounts. (Doc. 102-1, at 117:21-118:1). Logan never told any Broussard personnel not to make adjustments to those accounts receivable. (Doc. 102-1, at 118:2-7). MCNH also has not conducted research to discover whether the revenue adjustments were improperly made. (Doc. 102-13, at 89:23-90:5). MCNH has offered no evidence that the adjustments were false or inaccurate. Likewise, MCNH's expert witnesses do not opine that the adjustments were either false or inaccurate. MCNH simply assumes, without evidence, that Broussard made **all** adjustments at issue and that Broussard's intent in doing so was deceitful. MCNH cannot show beyond conclusory speculation that Broussard knowingly misrepresented any billing record or claim or intended MCNH to rely on any such misrepresentation.

Further, MCNH cannot show it suffered consequent and proximate injury from the adjustments Broussard made in late 2015. MCNH has produced no evidence or expert testimony, certainly not clear and convincing evidence, that demonstrates the claims would have been paid. MCNH claims the adjustments at issue on which it seeks damages were made after MCNH had allegedly already incurred those damages. (Compl. ¶ 8). In fact, MCNH seeks damages for amounts about which MCNH allegedly questioned Broussard and which were allegedly adjusted subsequent to those inquiries. (Compl. ¶ 8). Absent evidence that the claims at issue were collectible, MCNH cannot show that Broussard proximately injured it by allegedly

misrepresenting that those Medicare claims were uncollectable. *In re Mississippi Medicaid Pharm.*, 850 So. 2d at 84.

Broussard requests that the Court deny MCNH's Motion for Summary Judgment on its fraud claims because MCNH failed to present clear and convincing evidence the intent, falsity, ignorance of falsity, reliance, or proximate injury elements of its fraud claims.

## III.    MCNH has no admissible proof of its damages[10]

### A.    MCNH did not timely produce documents its expert witnesses  reviewed

In an attempt to excuse its failure to produce the documents its expert witnesses reviewed and/or relied on in forming their opinions, MCNH conflates the issue of whether it produced medical billing information with the issue of whether it produced documents its experts reviewed. MCNH also confuses document production with admissibility of evidence. MCNH attached Affidavits of its counsel Michael MacInnis[11] and its IT consultant Sean McDermott to its Motion for Summary Judgment to support its claims that it provided medical electronically stored information to Broussard is merely an attempt to confuse the issue. (Docs. 106-3 and 106-4).  MCNH attempts to place blame on counsel for Broussard for not obtaining alternate access to the documents. That accusation, however, ignores that MCNH's counsel informed Broussard's counsel on May 24, 2018:

---

[10] MCNH cited deposition testimony of Broussard expert witness Ralph Litoloff in which he stated he was not retained to testify or opine on whether MCNH suffered damages. (Doc. 107, p. 3). MCNH claims that Mr. Litoloff's testimony regarding the scope of his retention by Broussard means that he does not dispute that MCNH suffered damages. MCNH's conclusion regarding Mr. Litoloff's testimony is a non sequitur.

[11] Mr. MacInnis appears to want to serve as both an attorney and a witness in this matter. The Mississippi Rules of Professional conduct and Mississippi jurisprudence preclude an attorney from serving as both an attorney and a witness in a matter. Miss. R. Prof. Cond. 3.7; *Graves v. Dudley Maples, L.P.*, 950 So. 2d 1017, 1023 (Miss. 2007); *Pearson v. Parsons*, 541 So. 2d 447, 452 (Miss. 1989) (superseded by statute on other grounds). Further, MCNH failed to identify Mr. MacInnis as a person with discoverable knowledge or as a potential witness in any of its responses to discovery. As Mr. MacInnis has given testimony via affidavit in support of MCNH's Motion for Summary Judgment and Motion *in Limine* to Exclude Reports, Opinions, and Testimony of Christopher J. Murphy and Ralph A. Litoloff, Jr., Broussard reserves the right to call him as a witness at trial.

In connection with your subpoenas to our experts, I have conferred with each of them, and they do not have and were not provided anything except what was identified in their respective reports, ***all of which has been produced to you***. Likewise, ***none of them have any documents, notes, calculations, etc. that were not identified in their respective reports and also produced to you***.

(Exhibit 1, May 24, 2018 email) (emphasis added). That begs the question of why Broussard would need "read only" access to MCNH's AHT software when MCNH (mis-)represented that it had already provided all documents Broussard requested.

### 1.    MCNH did not comply with its discovery obligations

MCNH attempts to bootstrap its untimely production to conclude its summaries are admissible evidence. While MCNH provided 1403 tables of data in SQL format to Broussard, MCNH's expert witness LeBreton testified that he did not view the data in SQL format, that he does not know how to access the data in SQL format, and that the Lancaster Group, which employs Snyder, does not access or use data in SQL format when providing services to its clients. (Doc. 102-13, at 58:2-61:1). Again, MCNH's counsel represented in May of 2018 that its expert witnesses "[did] not have and were not provided anything except what was identified in their respective reports, ***all of which has been produced to you.*** Likewise, none of them have any documents, notes, calculations, etc. that were not identified in their respective reports and also produced to you." (Exh. 1) (emphasis added). As MCNH's tardy production and its counsel's August 10, 2018 email demonstrate, that representation was not accurate. (Doc. 102-15).

MCNH's expert Snyder admitted that she did not identify in her report that she had reviewed anything other than the $197,571.48 sample shown in attachment 7.8 to her report. (Doc. 98-1). She conceded in deposition that her January 2018 report informed Broussard only that she had reviewed claim information for the $197,571.48 sample shown in attachment 7.8. During her deposition, however, she contradicted her report and contended that for $912,242.00

of claims she actually reviewed "payment reconciliations, Medicare, DDEs, remits, claims, demographics, minimum data settings, diagnosis codes, web portals and census." (Doc. 98-2, at 124). Yet, Snyder admitted that she failed to state anywhere in her report and attachments that she actually allegedly reviewed such information and did not disclose any alleged wrong-doing that she found while investigating claims pertaining to a $912,242.11 sample. She said that her report did not include "specifics" for the $912,242.11 and relied on her sample. (Doc. 98-2, at 127). Snyder testified:

> Q.   And there's no indication that you gave to the Broussard attorneys or the Broussard Group in your report that you did any examination or investigation of payment reconciliations, Medicare DDEs, remits, claims, demographics, minimum data settings, diagnosis codes, web portals, or census with respect to the $912,242.11?
>
> A.   The information was not provided in the report, but my summary was included in my report.
>
> Q.   And the summary is based upon the Bellitto sampling, right?
>
> A.   Primarily. . . .
>
> *    *    *
>
> Q.   And as we sat here today in the deposition I showed you each one of those DF documents, didn't I?
>
> A.   Correct.
>
> Q.   And basically those DF documents correspond with the patients on the Bellitto sample, don't they?
>
> A.   Correct.
>
> Q.   Is there anything else in your report where you explain to the Broussard lawyers or to the people who are getting the report, is there anywhere else in your report where you disclose to Broussard any actual acts that Broussard did wrong and messed up on particular claims other than the ones you've talked about in the narrative of your report and the attachment that you've given us for the Bellitto sample, which I think is exhibit attachment 7.8?

A.     In my narrative report I think it's clear that my summaries indicate the - - the sampling obviously is just an example of some of the claims that I have provided detail in my report.

(Doc. 98-2, at 124-126).

Neither Snyder, pursuant to Broussard's subpoena served May 9, 2018, with a return date of May 25, 2018, nor MCNH, pursuant to Broussard's document requests, produced the information Snyder reviewed or on which Snyder relied to reach her opinions and conclusions relating to the $912,242.11. After the January 4, 2018 expert designation deadline, Snyder and MCNH did produce two documents, both of which Snyder admits that only she can comprehend or understand, during her deposition on August 1, 2018, two days before the expiration of the discovery deadline. (Doc. 98-2, at 54:8-25). The documents Snyder produced late are two computer runs with scribble on them. The two documents include colorful doodles and do not even contain complete sentences. (Doc. 98-6). The documents produced on August 1, 2018, during Snyder's deposition contain annotated printouts of Interim Aged Analysis for February 2016, Interim Aged Analysis for June 2016, and various Payment Reconciliations printed in March and April of 2016. (Doc. 98-6). MCNH produced Snyder's report on January 5, 2018. That report referred only to Interim Aged Analysis for December 2015, dated January 18, 2016. (Doc. 98-1, p. 2). Snyder testified that she relied on those documents in forming her opinions. (Doc. 98-2, at 54:8-57:15, 62:1-65:4).

MCNH produced additional documents on August 9, 2018, after the close of discovery, (Doc. 98-2); (Doc. 102-15), despite requests for production, subpoenas, and deposition notices requesting that the documents be produced at various points during the discovery period, far in advance of Snyder's deposition. The documents produced on August 9, 2018, included documents MCNH and Snyder identified as "American HealthTech Transaction Journals

(AR7100A) January 2014-December 2015." (Doc. 102-15); (Doc. 98-1, p. 2). Also produced were documents MCNH identified as DDE/FISS reports and which Snyder identified as "Medicare Claim Status Inquiry via Fiscal Intermediary Shared System (FISS)." (Doc. 102-15); (Doc. 98-1, p. 2). The August 9, 2018 production is attached as Exhibit 2. Snyder's report states that those documents were among the "documents, materials, and information [she reviewed]  to formulate [her] conclusions." (Doc. 98-1, p. 2).When questioned why MCNH did not produce those documents prior to the close of discovery, MCNH's counsel stated that MCNH's failure to produce those documents was "inadvertent" and "innocent." (Doc. 102-15). Those documents were dated as far back as 2014 and were undoubtedly in MCNH's possession, custody, or control when Broussard requested them in discovery.

Snyder used the withheld documents in writing her report, yet she did not identify some of them in her report or produce them in response to a subpoena. MCNH withheld those documents until after the expiration of the discovery period. (Doc. 98-8); (Doc. 98-9). Ms. Snyder's expert report is worthless without the underlying documents, which were not timely produced during the discovery period.

Because Snyder and MCNH failed to timely produce the documents underlying her report and damages summaries, MCNH cannot use those documents to supply evidence on any motion, including its Motion for Summary Judgment. Parties have a duty to disclose all documents, including electronically stored information, in their possession, custody, or control that may be used to support a claim or defense. FED. R. CIV. P. 26(a)(1)(A)(ii). Failure to provide information required under Rule 26(a) prohibits a party from using that information to supply evidence on a motion, unless the failure is substantially justified or harmless. FED. R. CIV. P. 37(c)(1).

### 2.    MCNH's violation of Rule 26 is not harmless

In evaluating whether a violation of Rule 26 is harmless, and thus whether the evidence may be used in support of a motion, the Court looks to four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose. *Texas A & M Research Foundation v. Magna Transp., Inc.* 338 F.3d 394, 402 (5th Cir. 2003).

### a.    Importance

The documents underlying MCNH's expert reports were important to Broussard for its use in preparing for depositions of those experts. So important, in fact, that Federal Rule of Civil Procedure 26(a) requires their disclosure and production. While the documents underlying MCNH's expert reports may now be important to MCNH, any importance is far outweighed by the prejudice to Broussard, that a continuance cannot cure such prejudice, and MCNH's weak explanation for its failure to produce the underlying documents during discovery.

### b.    Prejudice

MCNH's production of the documents Snyder reviewed or relied on in constructing her summary reports during her deposition on August 1, 2018, two days prior to the discovery deadline, prejudiced Broussard because it did not have those documents to use in preparing for Snyder's, or any other person's, deposition in this matter. Broussard formulated its defense in this matter based in part on the lack of any underlying documents to support Snyder's opinions and summaries. Allowing this untimely production would reward MCNH for withholding evidence in discovery until it perceives an opportune time to produce that evidence to jam its

opponent. Discovery is not intended to be a game of hide and seek; it is an opportunity for the parties to learn the truth about their claims and defenses.

### c.    Continuance

A continuance will not cure that prejudice because discovery is over and the dispositive motion deadline has passed. Broussard already incurred the costs of deposing Snyder and other witnesses. MCNH produced the documents a mere 16 days, some only 8 days, before the previous August 17, 2018 dispositive motion deadline. The extension of that deadline by one week did not cure the prejudice to Broussard, and a longer continuance will not change that Broussard has already conducted depositions without the benefit of relevant documents that MCNH withheld. MCNH did not move to further extend the discovery deadline after it "discovered" it had not produced the underlying documents. (Doc. 102-15).[12] In addition, Broussard has presented its defenses to the Court in its Motion for Summary Judgment, including the lack of underlying documents to support MCNH's damages claims. Allowing a continuance so MCNH can now produce documents negating those defenses, even though it has possessed those documents since before filing this action, would only further prejudice Broussard instead of curing prejudice.

### d.    Explanation

MCNH's post-discovery production on August 9, 2018, was supposedly the result of an "inadvertent and innocent" oversight, despite Ms. Snyder having possession of and relying upon the documents at the latest when she drafted her report in December of 2017 and early January of 2018. (Doc. 102-15). MCNH has offered no valid explanation for its untimely production. Until the eleventh hour of discovery, MCNH did not produce any underlying billing documents to

---

[12] MCNH's counsel admitted MCNH had possession, custody, or control of documents responsive to Broussard's discovery requests and ***did not produce them*** during the discovery period.

Broussard in the format in which MCNH keeps that information in the ordinary course of business. The AHT reports Snyder relied on in producing her expert report and summaries are themselves summaries of underlying medical records and billing documents. To date, MCNH has failed to produce the medical records underlying those summaries. Snyder's opinions were formed from summaries of summaries, and neither MCNH nor Snyder produced the underlying summaries or the documentation underlying those summaries. MCNH's explanation is that it produced the information to Broussard in SQL database format, which MCNH's expert LeBreton testified he did not use or even know how to use and that his company, including employee Snyder, does not use. (Doc. 102-13, at 58:2-61:1). One must ask how can a summary be admissible if the proponent cannot verify the underlying documents. The answer is that the summary cannot.

The *Texas A&M* factors set forth above weigh heavily in favor of exclusion of MCNH's untimely produced documents and the summaries created from those documents.

### B.    The Snyder and Bellitto summaries are not admissible because of the lack of underlying documents

Again, Snyder relied on documents in forming her opinions and damages summaries, and MCNH did not produce the underlying documents in discovery, as set forth above in Section III.A.1. Bellitto relies on summaries of documents that MCNH did not produce in discovery. Because of MCNH's failure to produce underlying documents prior to the close of discovery, the summaries prepared or relied upon by Snyder and Bellitto do not meet the requirements of Rule 1006 of the Federal Rules of Evidence and should not be considered by the Court. *Viterbo*, 646 F. Supp. at 1424 (holding the Federal Rules of Evidence apply to summary judgment motions). That Rule states:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

FED. R. EVID. 1006. Importantly, the proponent must show that the voluminous source materials are what the proponent claims them to be and that the summary accurately summarizes the source materials. 31 CHARLES A. WRIGHT & VICTOR J. GOLD, FEDERAL PRACTICE AND PROCEDURE § 8043, 525 (2000). There are four elements that must be met under Rule 1006. *U.S. v. Bishop*, 264 F.3d 535, 547 (5th Cir. 2001). Such summaries are admissible when:

> (1) they are based on competent evidence already before the jury, (2) the primary evidence used to construct the charts is available to the other side for comparison so that the correctness of the summary may be tested, (3) the chart preparer is available for cross-examination, and (4) the jury is properly instructed concerning use of the charts.

*Id.* Further, summary evidence must have an adequate foundation in evidence that is *already admitted*, and should be accompanied by a cautionary jury instruction. *Id.* The Fifth Circuit has warned against allowing a party to use a summary chart under Rule 1006 to assume that which it was required to prove pursuant to its burden of proof as operative facts of the alleged tort or offense. *United States v. Taylor*, 210 F.3d 311, 315-16 (5th Cir. 2000).

The Fourth Circuit's analysis of the procedure for admitting summary exhibits is instructive. *United States v. Ging-Hwang Tsoa*, 592 F. App'x 153 (4th Cir. 2014). The defendant disputed summary reports used by the government in convicting her of assisting another in a mortgage fraud conspiracy. *Id.* The summary reports at issue purportedly summarized nine mortgage transactions, and the government contended that the exhibit provided information taken directly from loan applications and other documents executed at closing. *Id.*

The court explained that under the rule, "the summary chart itself may come into evidence provided it is 'an accurate compilation of the voluminous records sought to be summarized' and the underlying records are 'otherwise . . . admissible in evidence.'" *Id*. (quoting *United States v. Janati*, 374 F.3d 263, 272 (4th Cir. 2004)). In addition to the underlying documents being voluminous, accurate, and admissible, they must also be made available to the opposing party. *Id*. The defendant disputed the first three elements of Rule 1006. *Id*. The court was unpersuaded by the defense's voluminous and accuracy arguments, but effectively agreed with the defendant on the admissibility of the summaries. *Id*. The defendant argued that the chart was improper because it was comprised of inadmissible hearsay not subject to any exception. *Id*. The court correctly noted that materials summarized by Rule 1006 must themselves be admissible because a contrary rule "would inappropriately provide litigants with a means of avoiding rules governing the admission of evidence such as hearsay." *Id.* (quoting *U.S. v. Irwin*, 682 F.3d 1254, 1262 (10th Cir. 2012)). The court held that because the government had yet to provide a Rule 902(11) certificate for the evidence or otherwise certify its admissibility, it would withhold a ruling until the government could provide sufficient information to establish the admissibility of the underlying documents. *Id.*

MCNH's expert witness Snyder cannot verify the accuracy of the documents underlying her summaries. Here, none of the elements analyzed above have been met. MCNH had possession of documents underlying the summary, and its expert witnesses viewed those documents in AHT software as MCNH maintains them in the ordinary course of business. MCNH did not produce any underlying billing documents to Broussard in the format in which MCNH keeps that information in the ordinary course of business to support the summaries. MCNH failed to produce a single document that supports the construction of its summaries so

that the correctness of the summary can be tested. Instead, MCNH produced 1403 tables of data in SQL format, a format that MCNH's own expert testified his company (including his employee Snyder) does not use. MCNH has simply constructed a summary of Medicare claims and proposes the total monetary amount of those claims represents the damages Broussard allegedly caused, solely based on MCNH's say-so. Failing to provide any evidence, admissible or otherwise, that purports to show how the entries on its summary reports were constructed and failing to produce the underlying documents prior to Snyder's deposition renders them inadmissible. Further, consideration of underlying documentation that was not produced during the discovery period is prejudicial to Broussard, who did not have the opportunity to review that documentation prior to conducting depositions. Fed R. Civ. P. 37(c)(1).

In addition, the documentation on which Snyder relied in preparing her summary was made up of AHT reports summarizing underlying medical billing information. MCNH's evidence of damages is doubly inadmissible, as it is a summary of a summary, and MCNH has not produced either the underlying documents or the reports summarizing those underlying data. Without those underlying documents, there is no way to analyze the accuracy of Snyder's damages summaries in comparison to the missing underlying documents, whatever those may be.

## IV.    MCNH cannot show entitlement to punitive damages or attorney's fees

MCNH alleged only two counts that would support an award of punitive damages: gross negligence and fraud. MCNH must establish each of those counts by clear and convincing evidence. As detailed above, MCNH cannot prove even simple negligence and cannot demonstrate fraud by clear and convincing evidence. The only way MCNH can show entitlement to attorney's fees is to first prove entitlement to punitive damages. MCNH cannot make that showing. Further, MCNH produced no evidence of attorney's fees incurred in support of its

Motion for Summary Judgment. On summary judgment, a court cannot award damages claimed but not proved in the Motion for Summary Judgment. *McGee v. Dolgencorp, LLC*, Civ. Action No. 5:14-cv-90, 2016 WL 5936885 at *4 (S.D. Miss. Oct. 12, 2016).

### A.    MCNH's request that the Court award it punitive damages has no legal basis

In its Motion for Summary Judgment and Memorandum in Support, MCNH requests that the Court "grant an award for punitive damages." That request reflects a lack of understanding of Mississippi law concerning punitive damages. First, compensatory damages must be awarded to a plaintiff before the Court makes any determination regarding punitive damages. MISS. CODE ANN. § 11-1-65(b). Next, the Court must hold an evidentiary hearing to determine whether the jury should consider the issue of punitive damages. *Id.* Only the jury may determine whether to award punitive damages and in what amount. MISS. CODE ANN. § 11-1-65(c). The question of whether to award punitive damages is one for the jury, not the judge. MCNH's request that the Court award it punitive damages at the summary judgment stage has no basis in law, is improper, and should not be considered by the Court.

### B.    MCNH cannot prove entitlement to punitive damages by clear and convincing evidence

Mississippi law does not favor punitive damages. *Bradfield v. Schwartz*, 936 So. 2d 931, 936 (Miss. 2006). "The kind of wrongs to which punitive damages are applicable are those which . . . import insult, fraud, or oppression and not merely injuries, but injuries inflicted in the spirit of wanton disregard for the rights of others." *Id.* (quoting *Summers ex rel. Dawson v. St. Andrew's Episcopal Sch., Inc.*, 759 So. 2d 1203, 1215 (Miss. 2000)).

> Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.

MISS. CODE ANN. § 11-1-65(1)(a).

MCNH offers only conclusory speculation, not admissible evidence, that Broussard acted with willful, wanton, and reckless disregard for MCNH's rights. MCNH argues that its expert witness reports "serve as sufficient support that Broussard . . . was grossly negligent as a matter of law . . . ." MCNH ignores that those expert reports are opinions, not evidence of willful, wanton, or reckless disregard for the rights of others. Further, an expert's opinion as to a defendant's state of mind is inadmissible. *Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 541 (5th Cir. 2007); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992).

MCNH's expert witness LeBreton's opinions regarding fraud stem solely from revenue adjustments to uncollectible accounts receivable. As set forth in Section II.C. above, MCNH was aware that Broussard made revenue adjustments and did not ever instruct Broussard not to do so. (Doc. 102-4, 42:20-51:19); (Doc. 102-1, 118:2-7). MCNH produced no evidence and did not allege that the adjustments Broussard made were inaccurate. Further LeBreton did not know if anyone at MCNH ever saw the summary reports on which revenue adjustments appeared. (Doc. 102-13, 94:21-95:6). Moseley, however, communicated with MCNH's accountant and with Broussard regarding adjustments. (Doc. 102-4, 45:20-21); (Doc. 102-12).

MCNH simply has insufficient evidence to prove entitlement to punitive damages by the clear and convincing standard applicable to that claim. Broussard requests that the Court deny MCNH's Motion for Summary Judgment on the issue of punitive damages.

### C.   MCNH cannot show entitlement to attorney's fees

MCNH's claim for attorney's fees depends wholly on its claim for punitive damages. "Mississippi law is well-settled with respect to awarding attorney's fees. If attorney's fees are not authorized by . . . contract or by statute, they are not to be awarded when an award of punitive

damages is not proper." *Miller v. Parker McCurley Properties, L.L.C.*, 36 So. 3d 1234, 1243-44 (Miss. 2010). MCNH cannot show an award of punitive damages is proper and therefore cannot prove entitlement to attorney's fees. Broussard requests that the Court deny MCNH's Motion for Summary Judgment on its claim for attorney's fees.

**CONCLUSION**

For the foregoing reasons, Broussard respectfully requests that the Court deny MCNH's Motion for Summary Judgment. Broussard requests any other relief this Court deems proper.

**RESPECTFULLY SUBMITTED** this the 7th day of September, 2018.

> **THE BROUSSARD GROUP, L.L.C. AND BROUSSARD HEALTHCARE CONSULTING, L.L.C., previously known as BROUSSARD & COMPANY HEALTHCARE CONSULTANTS, L.L.C. , Defendants**
>
> BY:  _/s/Matthew T. Biggers_____
> MATTHEW T. BIGGERS

Matt Quinlivan (MS Bar No. 103081)
matt@deutschkerrigan.com
Matthew Biggers (MS Bar No. 103325)
mbiggers@deutschkerrigan.com
Judy L. Burnthorn (MS Bar No. 101883)
jburnthorn@deutschkerrigan.com
DEUTSCH KERRIGAN, L.L.P.
2510 14th Street, Suite 1001
Gulfport, MS 39501
Telephone: (228) 864-0161
Facsimile: (228) 863-5278
*Attorneys for The Broussard Group, L.L.C. and*
*Broussard Healthcare Consulting, L.L.C.,*
*Previously known as Broussard & Company*
*Healthcare Consultants, L.L.C.*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing pleading or other paper with the Clerk of the Court via the ECF System that served copies upon all counsel and parties of record.

This 7th day of September, 2018.

/s/ Matthew T. Biggers
MATTHEW T. BIGGERS