# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**MADISON COUNTY NURSING HOME**                                                   **PLAINTIFF**

**V.**                                                     **CAUSE NO. 3:17-CV-422-CWR-JCG**

**THE BROUSSARD GROUP, LLC, and**                                    **DEFENDANTS**
**BROUSSARD HEALTHCARE**
**CONSULTING LLC, f/k/a BROUSSARD**
**& COMPANY HEALTHCARE**
**CONSULTANTS, LLC**

## ORDER

This cause is before the Court on several motions filed by Plaintiff in this breach of contract/negligence case. After considering the pleadings and relevant authorities, the Court finds that defense expert witnesses Christopher J. Murphy and Ralph A. Litolff, Jr. should be permitted to testify at trial. Accordingly, the Motion of Plaintiff *in Limine* to exclude the testimony of these expert witnesses will be denied. Additionally, Plaintiff's Motion for Summary Judgment, which is predicated on the argument that Defendants will lack the necessary expert testimony to defend this case once the subject expert opinions are excluded, will likewise be denied.

### I. Factual Background and Procedural History

Madison County Nursing Home ("MCNH") is a nursing home facility located in Madison County, Mississippi. In 2010, MCNH allegedly entered into a contract with The Broussard Group, LLC, and/or Broussard Healthcare Consulting, LLC, (collectively "Broussard") under which the latter agreed to provide Medicare-related billing services. According to the Complaint, Medicare guidelines require the timely submission of both claims and supporting documentation. If a claim and/or supporting documentation is not timely submitted to Medicare, the claim will be denied as time-barred by both that agency and other co-insurance programs.

At some point, MCNH reviewed the accounts of several of its residents. The review purportedly showed multiple instances in which MCNH was not paid for services provided to residents because Broussard failed to timely submit claims/supporting documentation to Medicare. After being notified of the review, Broussard allegedly altered the resident accounts by removing charges that could no longer be billed to Medicare because they were time-barred. Upon learning of the alleged billing errors and account alterations, MCNH conducted a thorough review of its Medicare billing. This review purportedly showed that Broussard's failure to timely comply with Medicare billing guidelines resulted in MCNH's losing over $1.2 million in Medicare and other insurance payments.

Based on these allegations, MCNH filed a lawsuit against Broussard in state court asserting claims of breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duties, negligence/gross negligence, and fraud. In addition to seeking actual and punitive damages, MCNH seeks equitable relief. The lawsuit was removed and, as the pleadings show the parties are diverse and the amount in controversy exceeds $1.2 million, the Court may properly exercise federal subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1332. The Court now considers MCNH's summary judgment-related motions.

## II. Discussion

MCNH has moved for summary judgment on the grounds that Broussard has not retained any expert qualified to refute the Medicare-related opinions offered by its own expert witnesses. See Mem. in Supp. of Mot. [Docket No. 107], 1 (arguing that because Broussard has not retained any qualified experts, it should be held liable in this case as a matter of law). In conjunction with

its Motion for Summary Judgment, MCNH filed a Motion *in Limine* seeking to exclude the expert witnesses designated by Broussard.

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

The United States Court of Appeals for the Fifth Circuit has held that when deciding whether expert testimony is admissible, "the court must ensure the expert uses reliable methods to reach his opinions; and those opinions must be relevant to the facts of the case." Guy v. Crown Equip. Corp., 394 F.3d 320, 325 (5th Cir. 2004) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 593-94 (1993)). To determine whether proposed expert testimony is reliable, the Court considers the following, non-exclusive, list of factors: "whether the proposed evidence or theory 'can be (and has been) tested'; whether it 'has been subjected to peer review and publication'; whether it has been evaluated in the light of 'potential rate[s] of error'; and whether the theory has been accepted in the 'relevant scientific community'." Id. (citing Daubert, 509 U.S. at 593-94). The analysis of whether proposed expert testimony is reliable "must remain flexible: not every Daubert factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." Id. (citations omitted).

MCNH moves to exclude the testimony of expert witness Christopher J. Murphy ("Murphy"), a certified public accountant who has experience in (1) operational and Medicare and Medicaid reimbursement consulting services, (2) financial statement audits, (3) accounting outsourcing services, (4) skilled nursing billing services, and (5) and Medicare and Medicaid compliance services. See Mot. *in Limine* [Docket No. 104], Ex. A (Murphy Report), at 14.[1] Murphy was retained by Broussard to analyze the opinions and conclusions given by MCNH expert witness Ed LeBreton ("LeBreton"). Id., Ex. A, 3. In his report, Murphy proffers several opinions including, but not limited to: (1) the use of revenue adjustments (as was done by Broussard) in skilled nursing billing systems is a common practice that is necessary to maintain accurate accounts; (2) LeBreton's damages opinions do not adequately consider the duties MCNH had to provide billing information, implement accounting controls, and independently collect payments from residents and non-Medicare providers; and (3) MCNH – not Broussard – had the duty to (a) collect payments on charges that had been pending for more than 60 days, and (b) obtain/update accurate information regarding Qualified Hospital Stays. Id., Ex. A, 4-13.

MCNH moves to exclude Murphy's opinions and testimony on the grounds that they will not assist the jury in deciding the Medicare-related issues in this case because "[h]e has never submitted a Medicare bill himself, never directly managed a person in submitting Medicare bills, and never had any training in submitting Medicare billing." Mem. in Supp. of Mot. *in Limine* [Docket No. 105], 11. MCNH also argues that Murphy's opinions are unreliable and/or irrelevant because he (1) did not review data and notes contained in its billing system; (2) did not consider

---

[1] Pleadings and exhibits are cited using the page numbers assigned by the electronic docketing system.

4

the propriety of the revenue adjustments made by Broussard; and (3) lacks familiarity with the course of dealings between the parties. Id. at 11-15 (arguing, at p.15, that Murphy's opinions are not reliable because "any knowledge [he] has in the area of skilled nursing services was not properly applied ... to the data, information, and the actual course of dealing between the parties.").

MCNH also moves to exclude the testimony of expert witness Ralph A. Litolff, Jr. ("Litolff"), a certified public accountant who has experience in economic damage analysis, forensic accounting, financial analyses and internal control reviews. See Mot. *in Limine*, Ex. B (Litolff Report), at 31. Litolff was retained by Broussard to offer a damages opinion, and to analyze the damages opinions and conclusions given by MCNH expert witness, Dawn Snyder ("Snyder"). Id., Ex. B, 2-3. In his report, Litolff proffers several opinions including, but not limited to, that Snyder's damages report does not consider alternate reasons for the non-collection of payments, including (1) that billing-related documents and information supplied by MCNH were incomplete or deficient, (2) Broussard was not responsible for billing and/or collecting payments from insurers other than Medicare, and (3) Broussard was not responsible for collecting payments on charges that had been pending for more than 60 days. Id., Ex. B, 4-12. Litolff also opines that Snyder's damages estimates are faulty and speculative because they are predicated on improper, meritless assumptions. Id., Ex. B, 12.

MCNH moves to exclude Litolff's opinions and testimony on the grounds that he is likewise not qualified to testify as an expert because he "does not have specific knowledge about Medicare billing ... has never been involved in preparing Medicare bills, has no specific knowledge of what's involved in preparing and submitting Medicare billing, [and] did not review all the

Medicare billing performed for MCNH." Mem. in Supp. of Mot. *in Limine*, 15-16. See also id. at 17 ("Litolff is simply not a Medicare billing expert. Therefore, his report and any testimony or analysis he provides as to the liability or damages sustained by MCNH should be excluded."). MCNH also argues that Liftoff's opinions/testimony should be excluded because (1) they constitute impermissible legal opinions; (2) he did not consider sufficient information when formulating his opinions but, instead, relied on a small sampling of documentation; and (3) he lacks familiarity with the course of dealings between the parties. Id. at 15-20.

  Having reviewed the pleadings and the subject expert reports, the Court finds the arguments being made by MCNH challenge the facts (or alleged lack thereof) underlying the opinions of Murphy and Litolff. Specifically, MCNH argues that the opinions offered by Murphy and Litolff are unreliable because they, personally, have never been involved in the Medicare billing process, they did not personally audit or review all of the Medicare billing that was performed by Broussard, and they did not consider information MCNH deems relevant. The Court finds these fact-based challenges go to the weight of evidence and not to its admissibility under Daubert. See, e.g., Carter v. Hornbeck Offshore Transp., LLC, 2014 WL 2898458, at *1–2 (E.D. La. June 26, 2014) ("[T]he reliability of data underlying an expert's opinion goes to the weight of ... evidence, but should not serve as a basis for its exclusion.") (quoting St. Joseph Abbey v. Castille, 2011 WL 2182046, at *5 (E.D. La. June 3, 2011) (citing Tyler v. Union Oil Co. of Cal., 304 F.3d 379, 392–93 (5th Cir. 2002)); General Elec. Capital Bus. Asset Funding Corp. v. S.A.S.E. Military Ltd., 2004 WL 5495590, at *4 (W.D. Tex. Oct. 21, 2004) ("Courts should not be lured by arguments disguised as Daubert challenges that actually attack the weight of the expert testimony,

not its admissibility. As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination."); Id. at *4 ("Therefore, challenges to the factual bases or underpinnings of an expert opinion usually go only to weight and credibility of the evidence, not admissibility.") (citing Moss v. Ole South Real Estate, Inc., 933 F.2d 1300, 1307 (5th Cir. 1991) and Matador Drilling Co. v. Post, 662 F.2d 1190, 1199 (5th Cir. 1981)). The merits of the conclusions offered by the experts will be subject to vigorous cross-examination and considered alongside Broussard's evidence. See Hankins v. Ford Motor Co., No. 3:08-CV-639-CWR-FKB, 2011 WL 6046304, at *3 (S.D. Miss. Dec. 5, 2011).

Because the Court finds the challenges raised by MCNH to the expert opinions of Murphy and Litolff go to credibility, and not admissibility, its Motion *in Limine* to exclude these experts will be denied.[2] Additionally, because the Court finds no basis for excluding the opinions and/or testimony of Murphy and Litolff, the Court finds the sole argument raised by MCNH in its Motion for Summary Judgment, i.e. Broussard failed to retain experts qualified to refute the opinions of its expert witnesses, is without merit. Accordingly, MCNH's Motion for Summary Judgment will likewise be denied.

### III. Conclusion

For the reasons above:

---

[2] MCNH has also moved to strike the declaration by Murphy that was submitted by Broussard in Response to the subject Motion *in Limine*. See Resp. [Docket No. 110], Ex. 2 (Murphy Dec.). In support of its Motion, MCNH argues that Murphy's Declaration should be struck because it contains information/opinions that were not included in his expert report. Because the Court was not required to consider Murphy's Declaration when deciding the Motion *in Limine*, MCNH's Motion to Strike that exhibit will be denied as moot.

7

IT IS THEREFORE ORDERED that Plaintiffs' Motion *in Limine* to Exclude Reports, Opinions, and Testimony of Christopher J. Murphy and Ralph A. Litolff, Jr. [Docket No. 104] is hereby denied.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Declaration of Christopher J. Murphy [Docket No. 132] is hereby denied.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment [Docket No. 106] is hereby denied.

SO ORDERED, this the 12th day of August, 2019.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE