**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**MADISON COUNTY NURSING HOME**                    **PLAINTIFF**

**V.**                              **CAUSE NO. 3:17-CV-422-CWR-JCG**

**THE BROUSSARD GROUP, LLC, and**                    **DEFENDANTS**
**BROUSSARD HEALTHCARE**
**CONSULTING LLC, f/k/a BROUSSARD**
**& COMPANY HEALTHCARE**
**CONSULTANTS, LLC**

## <u>ORDER</u>

This cause is before the Court on multiple motions that have been filed by the parties in this breach of contract/negligence case. Having considered the pleadings, the Court finds:

The Motion of Plaintiff to Strike New "Minutes Rule" Defense as an Avoidance and/or Affirmative Defense is not well taken and should be denied.

The Motion of Defendants to Strike Affidavit of Daniel Logan is not well taken and should be denied.

The Motion of Defendants for Summary Judgment should be granted in part and denied in part.

### I. Factual Background and Procedural History

The factual background and procedural history of this case are summarized in the August 12, 2019 Order of this Court. <u>See</u> Order [Docket No. 185].

### II. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record

showing a fact dispute.  Id. at 56(c)(1). The Court will view the evidence and draw reasonable

inferences in the light most favorable to the non-movant.  Maddox v. Townsend & Sons, Inc., 639

F.3d 214, 216 (5th Cir. 2011).  Unsubstantiated assertions, however, are not sufficient summary

judgment evidence. Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994).

## III.  Discussion

### A.    Contract-Related Claims

Defendants, The Broussard Group, LLC, and Broussard Healthcare Consulting, LLC,

(collectively "Broussard"), have moved for summary judgment on the contract-based claims

alleged by Madison County Nursing Home ("MCNH") on the grounds that the purported contract

between the parties does not legally exist.   In support of this argument, Broussard cites

Mississippi's "minutes rule," which requires that any contract entered into by a community

hospital board of trustees be recorded on the official minutes of the board.

Relevant to this argument, there is no dispute that MCNH is considered a "community

hospital," which is defined by Mississippi law as:

> [A]ny hospital, nursing home and/or related health facilities or programs . . .
> established and acquired by boards of trustees or by one or more owners which is
> governed, operated and maintained by a board of trustees.

MISS. CODE ANN. § 41-13-10(c).  There is also no dispute that MCNH is owned by Madison

County, Mississippi, and is operated by a board of trustees.  See id. §§ 41-13-10(d) and 41-13-29.[1]

Under Mississippi law, the board of trustees is responsible for "governing the community hospital

under its control" and for entering into contracts "for the providing of . . . services by or to the

---

[1] Under § 41-13-10(d), the term "'Owner' means "any board of supervisors . . . or any board of any municipality
having an ownership interest in any community hospital . . . ."  Such "Owner" is authorized to "appoint trustees for
the purpose of operating and governing" the facility.  Id. § 41-13-29(a)(1).

community hospital." Id. §§ 41-13-35(3) and 5(g). The board of trustees is also required to "keep minutes of its official business," id. § 41-13-35(3), which are the only mechanism through which it "speaks and acts". See Wellness, Inc. v. Pearl River Cnty. Hosp., 178 So. 3d 1287, 1290 (Miss. 2015) ("A community hospital board of trustees, as does any public board in the State of Mississippi, speaks and acts only through its minutes."); KPMG, LLP v. Singing River Health System, --- So. 3d ---, 2018 WL 5291088, at *5 (Miss. Oct. 15, 2018) ("public boards speak only through their minutes and that their acts are evidenced solely by entries on their minutes." Mississippi courts have applied this rule for more than a century. Singing River, 2018 WL 5291088, at *5.

Relevant to this case, the record shows that on November 22, 2010, the MCNH Board of Trustees ("Board") adopted the following Resolution: "That the Board of Trustees of [MCNH] does hereby enter into agreement with the Broussard Group for Medicare Services." See Mot. for Sum. J. [Docket No. 102], Ex. B (Board Minutes), at 41. Attached to the minutes was a proposed Billing Servicing Agreement ("2010 Proposal") between the Board and Broussard, which set out the duties of each party with respect to the Medicare billing services being offered by Broussard. See id., Ex. B, at 47-50. The 2010 Proposal included the following provision:

> The term of this Agreement shall be for a period of one (1) year, commencing on the effective date set forth above [i.e. May 1, 2010]. Thereafter, the Agreement shall be reviewed and shall continue from year to year unless terminated by either party in accordance with the provisions hereof.

Id., Ex. B, 47. The 2010 Proposal was signed by MCNH on November 24, 2010, but was not signed by Broussard. See id., Ex. C. Neither the terms nor an executed copy of the 2010 Proposal is contained in the minutes of the Board.

In September of 2011, Broussard submitted proposed changes to the Billing Services Agreement ("2011 Proposal"), which affected the duties it was required to perform, and the rate at which it was to be compensated. Although the 2011 Proposal was executed by Broussard, it was not signed by MCNH, and it does not appear in the minutes of the Board. Additionally, the minutes do not indicate that the terms of the purported agreement(s) were annually reviewed as specified in those agreements. See id., Ex. A (Logan Aff.) (testifying that the purported Billing Services Agreement was not brought up for review by the Board on an annual basis). There is no dispute that Broussard performed billing services required under the 2010 and 2011 Proposals, or that MCNH paid Broussard for those services.

In moving for summary judgment, Broussard argues that MCNH's breach of contract-related claims fail as a matter of law because the purported agreements entered into by the parties were not recorded on the official minutes of the Board. According to Broussard, because the purported agreements were not recorded on the official minutes, MCNH cannot prove the existence of a valid and binding contract as is required to maintain breach of contract claims under state law. Broussard's argument is supported by Mississippi law. See, e.g., Wellness, 178 So. 3d at 1291 (finding that because the minutes from the meetings of the board of trustees of a community hospital did not "set forth sufficient terms to establish the liabilities and obligations of the parties," there was no contract between the parties that could be enforced by the court); Thompson v. Jones Cnty. Cmty. Hosp., 352 So. 2d 795, 797 (Miss. 1977) (finding that although the official minutes reflected that the board of trustees agreed to enter into a contract and authorized its president to execute the contract, the contract could not be enforced because its terms were not included in the minutes); Singing River, 2018 WL 5291088, at *8 (where board failed to include

4

subsequent years of accountant's proposals in its minutes, the obligations and liabilities of both parties could not be determined therefore no contract existed for those years). See also Lefoldt for Natchez Reg'l Med. Ctr. Liquidation Trust v. Horne, L.L.P., 853 F.3d 804, 813–14 (5th Cir. 2017) ("The minutes rule under Mississippi law requires that the board of a public entity cannot act to enter into a contract unless that action is taken by a majority of a quorum of the board at a meeting and is reflected in the board's minutes.").[2]

In response, MCNH does not challenge whether the terms of either the 2010 Proposal or 2011 Proposal were "spread across" the minutes of its board of trustees as required under Mississippi law. Instead, MCNH first argues that the "minutes rule" only applies to private entities, i.e. it does not affect its ability to enforce a contract. See Mem. in Supp. of Resp. [Docket No. 121], 11 (arguing it could "find no authority that establishes the minutes rule can be used affirmatively by a private entity to avoid its contractual obligations [with] and/or to avoid claims of negligence [by] a political subdivision."). This argument does have some facial appeal because Mississippi courts have held that it "is the responsibility of the entity contracting with the Board, not the responsibility of the Board itself, to ensure that 'the contract is legal and properly recorded on the minutes . . . .'" Wellness, 178 So. 3d at 1291 (quoting Thompson, 352 So. 2d at 797). The Court, however, was neither cited nor able to find case law that expressly permits a board of trustees – unlike a private entity – to enforce a contract that has not been properly recorded in its official minutes. Indeed, and to the contrary, the Mississippi Supreme Court has repeatedly held

---

[2] To be clear, the entire contract does not have to be placed in the minutes, but enough of the terms and conditions must be placed in the minutes for determination of the liabilities of the contracting parties without the necessity of resorting to the other evidence. Jackson Cnty. v. KPMG, LLP, --- So. 3d ---, 2019 WL 242688 (Miss. Jan. 17, 2019).

that "where a public board engages in business with another entity, 'no contract can be implied or presumed, it must be stated in express terms and recorded on the official minutes and the action of the board." Id. (quoting Burt v. Calhoun, 231 So. 2d 496, 499 (Miss. 1970)) (alterations in original). Because the existence of a contract between a public board and a private entity cannot be implied or presumed under Mississippi law, the Court finds no merit in MCNH's argument that it can nevertheless seek to enforce a contract that was not properly set forth in its official minutes.[3]

Next, MCNH argues that Broussard cannot avail itself of the minutes rule because it failed to plead it as an affirmative defense.[4] The pleading of affirmative defenses is governed by Federal Rule of Civil Procedure 8(c)(1), which provides: "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." The failure to timely plead an affirmative defense may result in waiver and exclusion from litigation. See, e.g., LSREF2 Baron, LLC v. Tauch, 751 F.3d 394, 398 (5th Cir. 2014). The United States Court of Appeals for the Fifth Circuit has held, however, that the "technical failure to comply precisely with Rule 8(c) is not fatal," and that an affirmative defense will not be considered waived "if it was raised at a pragmatically sufficient time and did not prejudice the plaintiff in its ability to respond." Id. (citations and quotations omitted). "A district court has discretion to determine whether the party against whom the defense was raised suffered prejudice or unfair surprise as a result of the delay." Id.

---

[3] In Singing River, the court noted that even if the board and the contracting party stipulated that a contract existed, the court could not be bound by that stipulation because parties cannot "stipulate that which is prohibited by law." 2018 WL 5291088, at *8. The minutes rule is not taken lightly.

[4] MCNH also filed a separate Motion seeking to Strike the Minutes Rule defense raised by Broussard. For the reasons that follow, the Motion to Strike will be denied.

Here, the Court finds that even if the minutes rule constitutes an affirmative defense that must be specially pleaded under Rule 8(c), there can be no showing of prejudice or surprise to MCNH. As the party asserting the breach of contract-related claims, MCNH has always had the burden of proving the existence of a valid contract under Mississippi law. See, e.g., Kelley, LLC v. Corinth Pub. Utils. Comm'n, 200 So. 3d 1107, 1123 (Miss. Ct. App. 2016) (holding that the elements for establishing a breach of contract claim include "the existence of a valid and binding contract."). As discussed above, to prove the existence of a valid contract in this case, MCNH must show that the express terms of the agreement were "stated . . . and recorded on the official minutes" of the Board. Wellness, 178 So. 3d at 1291. As MCNH has always carried the burden of proving the existence of a valid, enforceable contract between the parties, and as Mississippi law requires that the minutes rule be satisfied in order for a valid contract to exist, the Court finds MCNH should not now be surprised or prejudiced to show compliance with the minutes rule. Accordingly, the Court finds MCNH is not entitled to relief on its argument that Broussard waived the issue of minutes rule compliance.

Finally, MCNH argues that Broussard should be equitably estopped from denying the existence of a valid contract between the parties because (1) it admitted the existence of a contract during discovery, (2) it rendered billing services required under the contract, and (3) it accepted payment from MCNH for the billing services. This argument also fails. Mississippi courts have been emphatic: "a public board may not be bound by estoppel unless the agreement at issue is duly and lawfully entered upon its minutes." Singing River, 2018 WL 5291088, at *10 (citations omitted). See also Pike Cnty., Miss., ex rel. Bd. of Supervisors v. Indeck Magnolia, LLC, 866 F. Supp. 2d (S.D. Miss. 2012) (finding that equitable estoppel could not be used to establish the

7

existence of an agreement between the county and a private party that had not been properly recorded on the public minutes). Second, the equity-based exception to the minutes rule raised by MCNH has already been rejected by the Mississippi Supreme Court. See Wellness, 178 So. 3d at 1293 (declining to grant an exception to the minutes rule in a case in which the board of trustees had discussed the contract on its minutes, had ultimately approved the contract, and had paid for services rendered under the agreement).

In sum, the Court finds that MCNH has failed to show that there exists a genuine issue of material fact as to whether the agreements it purportedly entered into with Broussard satisfy the requirements of the minutes rule. As such, the Court finds that MCNH has failed to show that there exists a genuine issue of material fact with respect to whether a valid contract exists as is required to maintain its breach of contract-related claims under Mississippi law. Accordingly, Broussard's Motion for Summary Judgment as to the breach of contract and breach of good faith and fair dealing claims will be granted.

### B. Negligence and Fiduciary Duty-Based Claims

Broussard has also moved for summary judgment on MCNH's negligence and fiduciary duty-based claims on the grounds that there is no evidence that a professional relationship existed on the minutes of its Board. This same argument was presented to United States District Judge Keith Starrett in the case of Lefoldt v. Rentfro, 2017 WL 5972692 (S.D. Miss. Dec. 1, 2017).

In Lefoldt, the Trustee for a bankrupt community hospital filed a lawsuit alleging claims of professional malpractice and breach of fiduciary duties against the group that provided accounting services for the hospital. When he considered a motion for summary judgment, Judge Starrett began by recognizing that an accounting malpractice claim under Mississippi law requires

showing: "'(1) the existence of a professional relationship; (2) negligence on the part of the accountant in handling the affairs of the client which have been entrusted to the accountant; and (3) proximate cause of injury.'" Lefoldt, 2017 WL 5972692, at *2 (quoting Gibson v. Williams, Williams & Montgomery, P.A., 186 So. 3d 836, 848 (Miss. 2016)). A professional relationship with an accountant can arise in cases in which:

> (1) a person manifests to an accountant the person's intent that the accountant provide accounting services for the person; and either:
>
> (a) the accountant manifests to the person the consent to do so; or
>
> (b) the accountant fails to manifest lack of consent to do so, and the accountant reasonably knows or should know that the person reasonably relies on the accountant to provide services . . . .

Id. (alterations in original; citations omitted). Judge Starrett found that the accounting firm could not be held liable on the malpractice or breach of fiduciary duty claims because the minutes of the board of trustees for the community hospital did not reflect the intent of the Board to maintain such a relationship. As fully explained by Judge Starrett:

> A professional relationship arises when, among other things, a person manifests their intent that an accountant provide accounting services for that person. Under Mississippi law, a community hospital board of trustees speaks and acts only through its minutes. It is undisputed that the [community hospital] Board's minutes do not reflect that [the hospital] manifested its intent that [the accounting firm] provide accounting services for the years 2010, 2011, 2012, and 2013. Therefore, Plaintiff can not legally prove the existence of a professional relationship between [the community hospital] and [the accounting firm] for those years.

Id. at *3.

Here, the minutes of the Board show that MCNH "enter[ed] into agreement with the Broussard Group for Medicare Services" in November of 2010. See Mot. for Sum. J., Ex. B (Board of Trustee Minutes), at 41. Although the terms, nature, and duration of the agreement referenced

9

in the resolution are not recorded in the minutes of the Board, the Court finds the minutes would support an inference that a professional relationship was created and existed between the parties. Additionally, MCNH has presented evidence to show that Broussard submitted invoices for the billing services it was providing to MCNH, and that MCNH paid those invoices between 2010 through 2014. <u>See</u> Resp. [Docket No. 116], Ex. 1 (Logan Aff.), ¶¶ 5-7.[5] As the record shows that Broussard was providing billing services for MCNH, and that it was being paid for the services it was providing beginning in 2010 and continuing through November 2014, the Court finds that MCNH has shown that there exists a genuine issue of material fact with respect to its negligence and breach of fiduciary duty claims. Broussard's Motion for Summary Judgment as to these claims will, therefore, be denied.

### C.     Fraud Claim

Broussard has moved for summary judgment on the fraud claim alleged by MCNH. In order to prove a claim of fraud under Mississippi law, the plaintiff must establish, by clear and convincing evidence, the following elements:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its

---

[5] Broussard has moved to strike Logan's Affidavit on the grounds that several of the documents upon which he relies, including the MCNH Board of Trustee minutes evidencing payments made to Broussard, billing invoices submitted to MCNH by Broussard, and check receipts evidencing payment by MCNH to Broussard, were not disclosed in discovery. The Court finds the record does not support the striking of Logan's affidavit as (1) the billing invoices suggest an on-going relationship between MCNH and Broussard and, therefore, are very important to the negligence and breach of fiduciary duties claims alleged in this case, (2) the prejudice to Broussard would be minimal because it surely knew that it had submitted the billing invoices to MCNH and likewise knew it had received payment from MCNH based on those invoices, (3) there is no reason for continuance because there has been no showing of prejudice to Broussard, and (4) MCNH has provided an arguable legitimate reason for having not produced the documents earlier, i.e. that the relevance of the documents did not become apparent until the minutes rule issue was raised by Broussard in its Motion for Summary Judgment. <u>See</u> <u>Texas A & M Research Found. v. Magna Trans., Inc.</u>, 338 F.3d 34, 402 (5th Cir. 2003) (setting forth factors to be considered by the Court when determining whether to strike untimely discovery materials).

falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.

Watson Labs., Inc. v. State of Miss., 241 So. 3d 573, 584 (Miss. 2018) (citations omitted). As understood by the Court, MCNH's fraud claim is predicated on Broussard's having allegedly applied "revenue adjustments" to off-set untimely charges that could no longer be billed to, or collected from, Medicare. MCNH argues that because the total amount in account receivables was decreased when the revenue adjustments were applied, it was led to believe that payments had actually been received from Medicare. In other words, MCNH argues it reasonably believed the amount in account receivables had decreased because payments were received from Medicare, and not because Broussard was allegedly writing-off untimely charges.

MCNH also points to a number of factual issues regarding Broussard's revenue adjustments and contends that those adjustments were made to appear that accounts were collected, when in fact they were not. In other words, some evidence suggests that these adjustments were made to "cover up" or make disappear uncollected claim amounts. Medical billing is a specialized field, a field in which MCNH had no expertise, and MCNH contracted with Brousssard, a company which had the professional expertise. Docket No. 107, at 2. Mindful of the Mississippi Supreme Court's holding that "[f]raud is essentially a question of fact best left for the fact-finder," In re: Mississippi Medicaid AWP Litigation, 190 So. 3d 829, 835 (Miss. 2015) (quotation marks, citation, and brackets omitted), this Court finds that sufficient factual issues present in this record to allow this claim to move forward.

## IV. Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Plaintiff to Strike New "Minutes Rule" Defense as an Avoidance and/or Affirmative Defense [Docket No. 134] is hereby denied.

IT IS FURTHER ORDERED that the Motion of Defendants to Strike Affidavit of Daniel Logan [Docket No. 122] is hereby denied.

IT IS FURTHER ORDERED that the Motion of Defendant for Summary Judgment [Docket No. 102] is hereby granted in part and denied in part. The Motion is granted to the extent it seeks summary judgment on the contract-related claims alleged in this case, but is denied with respect to the negligence-based and fraud claims.

SO ORDERED, this the 12th day of August, 2019.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE